UNITED STATES BANKRUPTCY COURT
DISTRICT OF NORTH DAKOTA

In re:

Michael F. Geller and
Esther M. Geller,

Bankruptcy No. 03-32160
Chapter 7

Debtors.

_____/

Kip M. Kaler as Bankruptcy
Trustee,

Plaintiff,

vs.

Adversary No. 04-7018

Michael F. Geller and
Esther M. Geller,

Defendants.

_____/

**MEMORANDUM AND ORDER**

By complaint filed March 4, 2004, and amended complaint filed June 17, 2004, Kip M. Kaler, the bankruptcy trustee in this case, initiated this adversary proceeding seeking a determination that Debtors Michael F. Geller and Esther M. Geller are not entitled to a discharge pursuant to 11 U.S.C. § 727(a)(2), (3), (4) and (6)[1]. The Debtors filed separate answers on April 1, 2004, denying the allegations.

The matter was tried on August 4, 2004. From the evidence presented, the following constitutes the court's findings of fact and conclusions of law.

---

[1] The trustee withdrew the cause of action under 11 U.S.C. § 727(a)(6) at trial.

AO 72A
(Rev.8/82)

## I. FINDINGS OF FACT

Michael Geller has brokered trucks, parts and equipment for 34 years. In June 2003, he moved from Fargo, North Dakota to Arizona and worked for American Truck Salvage, Inc. from June 1, 2003 to December 1, 2003. During the term of his employment with American Truck Salvage, Michael Geller earned $45,000.00. Esther Geller was employed in Fargo by Marshall Field's in 2003, and she also worked at Bath & Body Works during the holiday season. The Debtors have a house in Fargo, where Esther Geller has resided at all times relevant to this proceeding.

Attorney Max D. Rosenberg[2] testified he first discussed bankruptcy with the Debtors in January 2003 in connection with a number of state court proceedings in which he represented the Debtors. By spring of 2003, Michael Geller thought he might need to file for bankruptcy relief, but he needed additional time to consider it. Attorney Rosenberg testified that he explained every aspect of bankruptcy law to the Debtors, particularly Michael Geller, several times, and each time Michael Geller wanted more time to think about it. Attorney Rosenberg explained repeatedly to them that a debtor in bankruptcy must be honest and list all assets and debts, and warned them that they would have problems if they did not do so because of judgments against them and because of their high profile and well-known name. Attorney Rosenberg told them to make sure they kept themselves "clean" so they did not jeopardize a potential bankruptcy discharge.

Michael Geller told Attorney Rosenberg he was considering forming a corporation in Arizona or Nevada for the purpose of brokering auto parts. Michael Geller's businesses in North Dakota

---

[2] Attorney Rosenberg has been an attorney since June 25, 1957, and began practicing bankruptcy in 1961. He testified that in the last ten years, bankruptcy has constituted 80-85% of his practice.

collapsed in 2002, and he was looking to get back into independent brokering. Attorney Rosenberg testified Michael Geller was particularly interested in incorporating in Nevada because creditors could not get access to his business records under the laws of Nevada. Attorney Rosenberg advised him not to form a corporation prior to filing bankruptcy because it would only cause himself trouble.

Notwithstanding the advice of Attorney Rosenberg, Michael Geller formed Michael Marx, LLC on March 28, 2003, under the Nevada laws of incorporation. He testified at trial that he incorporated in Nevada because its laws are favorable toward businesses. He opened a bank account in the name of Michael Marx, LLC d/b/a/ American Truck on July 7, 2003. The account was used for brokering trucks and parts, but Michael Geller also deposited personal checks into the account to fund the business and to pay personal expenses. Michael Marx has no storefront, inventory or accounts receivable. It is simply a trade name, and its only asset is a cell phone.

Attorney Rosenberg also discussed with the Debtors whether to file a joint petition or separate petitions. He suggested Michael Geller file alone so that at least one of them, Esther Geller, would retain a decent credit rating. He further advised that she could file separately later if such became necessary. Michael Geller told Attorney Rosenberg that Esther Geller would not agree to file separately, and Attorney Rosenberg again advised that he thought filing a joint petition was a mistake.

Attorney Rosenberg also discussed with Michael Geller the possibility of filing for bankruptcy in Arizona. Michael Geller was interested in maximizing their bankruptcy exemptions, and the Debtors' house in Fargo was a major factor because of their significant equity in the property. Attorney Rosenberg told them they might lose the homestead exemption in the property if Michael Geller filed in Arizona. Esther Geller made telephone calls to attorneys in Arizona who also advised

the Debtors they would have problems claiming a homestead interest in North Dakota property under Arizona law.

In May 2003, Esther Geller provided Attorney Rosenberg with a list of personal property for purposes of preparing the Debtors' bankruptcy schedules, even though the Debtors had not yet decided to file. The list included a baby grand piano that the Debtors told Attorney Rosenberg belonged to their daughter.

The Debtors ultimately filed a joint petition for relief under chapter 7 of the Bankruptcy Code in North Dakota on December 5, 2003. Esther Geller completed a worksheet for Attorney Rosenberg to use in preparing the Debtors' bankruptcy schedules, but Attorney Rosenberg testified he was unable to file the Debtors' bankruptcy schedules by the December 19, 2003 deadline because he did not have all the information he needed from the Debtors. The Debtors were granted an extension to file their schedules until December 31, 2003. Esther Geller visited Attorney Rosenberg at his office during the weeks prior to filing the schedules, but he did not go through the petition item by item with her. Michael Geller returned to Fargo on December 21, 2003, and Attorney Rosenberg obtained from him the additional information he needed.

Attorney Rosenberg brought the completed schedules to Esther Geller while she was working on December 31, 2003. She was busy with customers and signed the schedules and statement of affairs without reading them. She did not ever subsequently read them. Michael Geller likewise stated that he did not read the schedules and statement of affairs prior to signing them. Although he was unsure whether he ever read them, he testified he did "peruse" them later.

The Debtors filed their schedules and statement of financial affairs on December 31, 2003. The statement of financial affairs stated the Debtors did not receive any income from employment or

4

AO 72A
(Rev.8/82)

from the operation of a business during the two years preceding 2003. It also states the Debtors were holding a baby grand piano belonging to their daughter. The petition does not disclose any bank accounts held by the Debtors.

The Debtors filed amended schedules B, C, and F, Statement of Financial Affairs, and Statement of Intention on January 5, 2004, about an hour before the first meeting of creditors in their case. The amended statement of financial affairs stated the Debtors were unable to obtain the books and records from the buyers of the Debtors' previous businesses. It also stated Esther Geller earned $3,500.00 in the past two years from various part time jobs, but did not say anything about Michael Geller's employment or his operation of Michael Marx or American Truck. The amended schedules included, for the first time, disclosure of the Debtors' individual bank accounts and Michael Geller's interest in Michael Marx valued at $812.00. Attorney Rosenberg testified he discovered only after the bankruptcy filing that Michael Geller had gone against his advice and formed the corporation. Esther Geller learned her husband was doing business as Michael Marx, LLC a couple months before the bankruptcy filing, but she testified she had not provided Attorney Rosenberg with any information as to the value of the corporation because she was not a part of it. She signed the cover sheet for the amendments an hour before the meeting of creditors, so she did not have much time to go over the amendments. Michael Geller testified that he again merely perused the documents prior to signing them.

At the creditors meeting, both Debtors took an oath. They conceded that they had never given the baby grand piano to their daughter and that it actually belonged to them. They both testified that all their creditors were listed on the petition and that they did not have any undisclosed sources of income. Michael Geller testified he read all of the bankruptcy petition documents thoroughly before signing them and they were true, accurate and complete. At trial, he explained that

5

everything was true, accurate and complete on the petition given the questions he had been asked by Attorney Rosenberg. He did concede, however, that swearing he had thoroughly read the petition was incorrect at the time because he had read only the sections of the petition with answers and had perused the rest. He did not tell the trustee at the meeting of creditors he had only perused the petition because he was nervous and scared. When asked at trial why he did not read the petition especially carefully if he was scared, he said he relied on Attorney Rosenberg to have completed the petition correctly. Michael Geller did not deem it necessary to disclose his interest in businesses he had operated in the petition because Attorney Rosenberg knew about his businesses. He told the trustee that he valued Michael Marx at $812.00 because that was the amount in the Michael Marx account at the time of filing.

At the meeting of creditors, the trustee told Attorney Rosenberg the petition would have to be amended to include Schedules I and J, and Attorney Rosenberg commented that he was trying to keep the United States Trustee "in the dark." At trial, Attorney Rosenberg testified he probably should not have made the comment, but it is the position he often takes toward the United States Trustee. He also testified that Schedules I and J had not been filed earlier because he thought the debts were primarily commercial. Upon information from the trustee that the Debtors also had consumer debts, he prepared schedules I and J.

The Debtors filed amended schedules B, C, I, and J on February 6, 2004. The amendment cover sheet was signed by both Debtors. Schedules I and J were filed for the first time in their case. The Debtors did not amend the statement of affairs to correct the misstatement that the baby grand piano was owned by their daughter, but they did add the piano to amended schedules B and C.

AO 72A
(Rev.8/82)

The Debtors' schedules did not include a Frank Sinatra print they bought 15 years ago at an auction at Temple Beth El. Esther Geller testified she could not remember how much they paid for the print, but that she considered it of "no major value." The Debtors also did not include a fax machine in their schedules because, Esther Geller testified, the fax machine is nine years old, obsolete, and of little value—between $25-50 she guessed. Esther Geller testified she was not aware they had to disclose "every little thing." She conceded that Attorney Rosenberg relied on the information she provided in preparing the schedules, and if something was missing from the schedules it was because she did not include it on her list of their personal property. She insisted, however, that she relied on Attorney Rosenberg to complete the schedules correctly after giving him the information he requested, and he did not ask about the contents of the list of their property. Michael Geller acknowledged at trial that he knew he was required to disclose all his assets in the bankruptcy petition. He also averred he had disclosed all his assets because Attorney Rosenberg knew about them.

Although Michael Geller was living in Arizona and had furnished his apartment, the Debtors did not disclose his Arizona residence on the statement of affairs or the apartment furniture in their schedules. Esther Geller testified she did not feel obligated to list the personal property in Arizona because Attorney Rosenberg did not tell her to do so. Michael Geller testified simply that he "never even thought about" disclosing the apartment furniture in the petition.

Gold Star Distributing was not disclosed as a creditor in the petition, but Michael Geller testified Gold Star was owed $3,500.00 at the time of filing. Gold Star advanced him $12,000.00 in May or June of 2003, and he refunded approximately $8,500.00 of the advance[3] over an

---

[3] Michael Geller also characterized the $12,000.00 as a "deposit."

7

unspecified time prior to the bankruptcy filing. He averred he did not have a legal obligation to refund the money, and therefore Gold Star was not a creditor, but that he made the payments to maintain the business relationship. The payments to Gold Star were not disclosed as payments to a creditor within 90 days of the bankruptcy filing.

The Debtors had a bank account at Town and Country Credit Union in the name of M&E Properties that was closed in July 2003. Esther Geller testified she knew about the account but she did not know the account had been closed. This account was not disclosed under the section of the statement of affairs involving financial accounts closed within one year of the bankruptcy filing. Esther Geller testified Attorney Rosenberg had not asked whether the Debtors had closed any financial accounts within the last year.

American Truck Salvage, Michael Geller's employer from February 1, 2003 to December 1, 2003, filed an adversary proceeding[4] against Michael Geller seeking a money judgment against him and a determination of nondischargeability of the debt under 11 U.S.C. § 523(a). American Truck Salvage alleged Michael Geller embezzled more than $125,000.00. Michael Geller acknowledged his wrongdoing and stipulated to the nondischargeability of a judgment in favor of American Truck Salvage in the amount of $129,900.00. Pursuant to the stipulation, American Truck Salvage agreed not to pursue collection or enforcement of the judgment if Michael Geller pays $90,000.00 to American Truck Salvage through $2,500.00 monthly payments. If he defaults under the agreement, the debt reverts to $129,900.00 and a 12% interest rate will be imposed. In other words, Michael Geller can avoid the higher debt amount and interest if he makes all the payments. The debt to American Truck Salvage, Inc. was listed in the petition as an $11,500.00 disputed debt. At trial, the

---

[4] Adv. No. 04-7015.

trustee asked Michael Geller what he did with the $45,000.00 he earned as salary and the $90,000.00 he embezzled from American Truck Salvage. Michael Geller said some went to creditors and some was used for personal draws to maintain living expenses. He testified his bank statements are the only documents he has to substantiate what he did with the $135,000.00.

The trustee asked Michael Geller to provide business records. Michael Geller gave the trustee bank statements and asserted they were the only documentation he had of his business' financial transaction. Michael Geller testified that the types of documents the trustee sought, such as invoices and delivery receipts, are in the possession of vendors or customers, not him. He does not see these types of documents because he does not buy or sell, he brokers.

On December 5, 2003, the filing date, the balance in the Michael Marx account was $5,086.05. The Debtors scheduled the value of Michael Marx as $812.00. The lowest account balance in November and December 2003 was $1,489.81 on December 15, 2003. Michael Geller testified that he valued Michael Marx at $812.00 because $5,000.00 was in the account and he had $4,000.00 in outstanding bills.

When asked at trial whether the Debtors ever suggested concealing assets, Attorney Rosenberg testified that Michael Geller asked him on more than one occasion, "If they haven't seen it, how are they gonna know about it?" Attorney Rosenberg responded, "If you saw it, you have to reveal it, and you have to reveal it to me now. Have you told me everything that you own and every debt that you owe? . . . Because you're signing these schedules, and they're yours. And you're the ones that are responsible for the information you're giving me." He further told them, "I can't go out and check every asset that you have just because you haven't told me, I'm not gonna run a search on what you own and what you don't own. You've got to tell me what's there." When asked whether

9

he had this conversation with just Michael Geller or with both of the Debtors, Attorney Rosenberg responded, "Well, I know on more occasions it was with just Mike, but I had her in the office, and she knew this, and there wasn't any doubt in my mind that they were both informed of that more than once." Attorney Rosenberg said he explained to them the obligation of truthfulness and the penalty of perjury and told them they had to be accurate and honest. He provided them with copies of every document prepared in the bankruptcy.

## II. CONCLUSIONS OF LAW

The trustee seeks to have the Debtors denied a discharge under 11 U.S.C. § 727(a)(2), (3), and (4). Denying a debtor a discharge is a drastic remedy. See In re McLaren, 236 B.R. 882, 893 (Bankr. D.N.D. 1999). In light of the policy implications favoring debtors under the Bankruptcy Code, section 727 must be construed liberally in favor of the debtor and strictly against the objecting party, with the burden of proof thereunder resting squarely on the latter. See id. The standard of proof is a preponderance of the evidence. See id.

A debtor may be denied a discharge under section 727(a)(4)(A) if the debtor knowingly and fraudulently, in or in connection with the case, made a false oath or account. Jordan v. Bren (In re Bren), 303 B.R. 610, 613 (B.A.P. 8th Cir. 2004). The Bankruptcy Code is designed to ensure that deserving debtors receive a "fresh start" by requiring them to provide complete, accurate, and reliable information at the commencement of the case such that all parties may adequately evaluate the case and the estate's property may be appropriately administered. Id. at 614. Courts are often understanding of a single omission or error resulting from an innocent mistake, but multiple inaccuracies or falsehoods may rise to the level of reckless indifference to the truth, which is the functional equivalent of intent to deceive. Id. (citations omitted).

10

The Debtors in this case made numerous material false statements or omissions under oath by signing the original bankruptcy petition and each set of amended schedules and statement of affairs. In the schedules filed on December 31, 2003, the Debtors failed to disclose Esther Geller's checking account and Michael Geller's checking account. They also failed to disclose the Michael Marx account and their ownership interest in Michael Marx. They did not disclose their ownership of the baby grand piano in the schedules, and the statement of affairs incorrectly stated their daughter owned the piano and they were merely holding it for her. The Debtors' statement of affairs incorrectly stated the Debtors did not receive any income from employment or from the operation of a business during the two years preceding 2003.

In the amended schedules filed January 5, 2004, the Debtors again failed to disclose the Michael Marx account, and misrepresented the value of the stock as $812.00 when the account contained $5,086.05 on the filing date and never contained less than $1,489.81.

The Debtors made several fraudulently material omissions that they never cured. They failed to disclose: the apartment furniture; the Sinatra print; the fax machine; the closure in July 2003 of the account in the name of M&E Properties; the $129,900.00 debt to American Truck Salvage; the payments to Gold Star and the existence of Gold Star as a creditor.

They also made numerous material false statements under oath by providing false information to the trustee at the meeting of creditors. The Debtors both testified they did not have any other sources of income, but Michael Geller was actively involved in the brokering of trucks and parts for profit. Michael Geller also testified that he valued Michael Marx at $812.00 because that was the balance in the Michael Marx account on the date of filing, but the account balance was actually $5,086.05.

11

Finally, the Debtors certified under penalty of perjury that they read the schedules and statement of affairs and the amended schedules and statement of affairs and they were true and correct. Bankruptcy courts in this circuit have determined that the affirmative declaration by debtors that they have read the schedules and statement of affairs and that they are accurate, when the debtor in fact either did not read the schedules and statement of affairs or simply glanced at them (or "perused" them), constitutes a cavalier and reckless disregard for the truth which is inconsistent with the relief to be afforded the honest debtor. See Bren, 303 B.R. at 616. The Bankruptcy Appellate Panel for the Eighth Circuit recently stated in Bren:

> Declaring under penalty of perjury that the Statement of Affairs and Schedules have been read and are accurate, when the truth is that the Schedules and Statement of Affairs have not been read and are not accurate, is such a significantly detrimental act in terms of the bankruptcy process that we conclude that such declaration, when considered with the number and extent of the omissions and inaccuracies, was made with reckless disregard for the truth and with fraudulent intent. The bankruptcy system relies upon the truthfulness of those who seek its benefits. To allow debtors to ignore the seriousness of their oath, submit documents to the court which contain numerous material inaccuracies, and, when the inaccuracies are discovered, excuse their behavior because they claim they failed to read the documents before signing them under oath, would undermine the whole structure of the system.

Id. The Debtors' failure to thoroughly read the schedules and statement of affairs, in conjunction with the numerous material omissions and inaccuracies, constitutes reckless disregard for the truth and the functional equivalent of intent to deceive. See id. at 614.

The Debtors contend they relied on Attorney Rosenberg to completely and accurately prepare their schedules and statement of affairs. Reliance on attorney advice absolves a debtor of fraudulent intent only when that reliance was reasonable and the advice given was informed advice. See McLaren, 236 B.R. at 882. The court is simply not convinced that Attorney Rosenberg was fully informed by the Debtors. Attorney Rosenberg is an experienced and reputable attorney, and he

12

repeatedly emphasized to the Debtors the importance of disclosure and truthfulness. The court concludes that the preponderance of the evidence shows the Debtors knowingly and fraudulently, in or in connection with the case, made numerous false oaths.

Based on the foregoing, Debtors Michael F. Geller and Esther M. Geller are DENIED a discharge in bankruptcy pursuant to 11 U.S.C. § 727(a)(4)(A) and it is unnecessary for the court to discuss 11 U.S.C. § 727(a)(2) and (3).

**SO ORDERED.**

Dated this September 2nd, 2004.

WILLIAM A. HILL, JUDGE
U.S. BANKRUPTCY COURT

Notice of Entry
Under F.R.B.P. 9022 (a)
FILED

SEP 0 2 2004

Clerk
U.S. Bankruptcy Court
District of North Dakota

13

AO 72A
(Rev.8/82)